**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRIAN JONES,<br><br>        Plaintiff,<br>v.<br><br>1LIFE HEALTHCARE, INC., SCOTT C. TAYLOR, DAVID P. KENNEDY, AMIR DAN RUBIN, PAUL R. AUVIL, MARK S. BLUMENKRANZ, KALEN F. HOLMES, FREDA LEWIS-HALL, ROBERT R. SCHMIDT, and BRUCE W. DUNLEVIE,<br><br>        Defendants, | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Brian Jones ("Plaintiff"), alleges the following on information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against 1Life Healthcare, Inc. ("1Life" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9 arising out of the Board's attempt to acquire Iora Health, Inc. ("Iora").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading registration statement to be filed with the SEC on July 6, 2021 (and as amended July 14, 2021, the "S-4"). The S-4 recommends that 1Life stockholders vote in favor of issuing 56.1 million shares of 1Life common stock (the "Stock Issuance") to effectuate 1Life's acquisition of Iora (the "Proposed Transaction"). The Proposed Transaction was first disclosed on June 7, 2021, when 1Life and Iora announced that they had entered into a definitive

merger agreement (the "Merger Agreement") pursuant to which each Iora stockholder will receive 0.689 shares of 1Life common stock for each share of Iora common stock they own. Upon completion of the Proposed Transaction, current 1Life stockholders will own approximately 72% of the combined company and former Iora stockholders will own approximately 28% of the combined company. The Proposed Transaction is valued at approximately $2.1 billion.

3. The S-4 is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the S-4 contains materially incomplete and misleading information concerning: (a) 1Life's and Iora's financial forecasts; (b) the financial analyses performed by 1Life's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"); and (c) potential conflicts of interest involving Morgan Stanley.

4. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Stock Issuance and/or the Proposed Transaction, including filing any further amendments to the S-4 with the SEC or otherwise causing any further amendments to the S-4 to be disseminated to 1Life's stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to 1Life's stockholders. In the event the Stock Issuance and/or the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5. Plaintiff is, and has been at all relevant times, the owner of shares of 1Life common stock.

6. Defendant 1Life is a Delaware corporation with its principal executive offices located at One Embarcadero Center, Suite 1900, San Francisco, California 94111. 1Life common stock trades on NASDAQ under the ticker symbol ONEM.

7. Defendant Bruce W. Dunlevie has been a director of the Company since 2007.

8. Defendant David P. Kennedy has been a director of the Company since 2007.

9. Defendant Amir Dan Rubin has been President, Chief Executive Officer ("CEO") and a director of the Company since September 2017. Defendant Rubin also serves as Chair of the Board.

10. Defendant Paul R. Auvil has been a director of the Company since 2019.

11. Defendant Mark S. Blumenkranz has been a director of the Company since 2019.

12. Defendant Kalen F. Holmes has been a director of the Company since 2017.

13. Defendant Freda Lewis-Hall has been a director of the Company since 2019.

14. Defendant Robert R. Schmidt has been a director of the Company since 2018.

15. Defendant Scott C. Taylor has been a director of the Company since June 3, 2021.

16. Defendants Dunlevie, Kennedy, Rubin, Auvil, Blumenkranz, Holmes, Lewis-Hall, Schmidt and Taylor are collectively referred to herein as the "Board" or the "Individual Defendants."

17. Nonparty Iora is a private company based at 101 Tremont Street, 6th Floor, Boston, MA 02108.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

19. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

20. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

21. 1Life provides healthcare through a membership-based primary care platform. Either directly or through their employers, people can obtain an annual membership that provides 24/7 digital health services, as well as in-office care staffed by clinicians not paid on a fee-for-service basis. 1Life memberships offer routine and preventative primary care, chronic and acute care, lab services, immunizations, COVID-19 testing, behavioral health services, women's health services, pediatrics, sports medicine, and LGBTQ+ care.

22. On June 6, 2021, the Company entered into the Merger Agreement with Iora.

23. According to the press release issued on June 7, 2021 announcing the Proposed Transaction:

> SAN FRANCISCO, June 07, 2021 (GLOBE NEWSWIRE) -- 1Life Healthcare, Inc. (One Medical) (Nasdaq: ONEM), a leading human-centered and technology-powered primary care organization, today announced it has entered into a definitive agreement to acquire Iora Health, a human-centric, value-based primary care group with built-for-purpose technology focused on serving Medicare populations, in an all-stock transaction valued at approximately $2.1 billion.
>
> "We are delighted to announce plans to combine with Iora Health, a technology-powered primary care leader delivering outstanding member-based, value-based care for adults 65+ enrolled in Medicare Advantage and other at-risk reimbursement models. Together we will expand our addressable market to serve more members in more geographies with digital and in-person care across every stage of life, with further capabilities to deliver care within full-risk models. Together with Iora Health, we can deliver better health, better care, and lower costs for children, adults, and seniors," said Amir Dan Rubin, Chair & CEO of One Medical.
>
> "Chris McKown and I founded Iora Health over 10 years ago to build an innovative primary care model that transforms lives and improves outcomes through relationship-based care, and we are excited to take this next exciting step with One Medical," said Rushika Fernandopulle, M.D., MPP, Co-Founder and Chief Executive Officer of Iora Health. "Together, with our aligned cultures, shared mission, and complementary

models, we can drive even greater impact for our patients, our teams, and our investors, and most importantly, our shared vision of transforming healthcare."

One Medical and Iora Health are aligned in their missions, models, and cultures to transform healthcare for key stakeholders -- Consumers, Employers and Payers, Providers, and Health Networks.  Together, the two companies can further accelerate and build upon their impacts for these stakeholders, while simultaneously expanding their models in existing markets, entering new markets, serving new populations, expanding full-risk models, and leveraging their purpose-built technologies for increased growth and scale.

**Strategic and financial benefits of the transaction include:**

- Creates a premier national member-based, technology-powered primary care platform to deliver better health, better care, and lower costs across Commercial and Medicare populations;

- Positions One Medical with Iora Health to advance the health of members across every stage of life;

- Extends One Medical's platform to deliver multi-modal care with 24/7 national digital health and in-person care across a combined 28 markets and beyond;

- Expands potential market opportunity to $870 billion across Commercial and Medicare segments, including the new Medicare Direct Contracting program;

- Enhances One Medical's risk-taking capabilities and extends One Medical into full-risk Medicare reimbursement models;

- Amplifies the power of purpose-built technologies to deliver premier member experiences, population health, provider support, and value-based care across every stage of life;

- Accelerates the expansion of two high-growth organizations, with complementary cultures and models serving as a premier place to practice modernized healthcare; and,

- Offers an opportunity to create significant value, with an expected $350+ million in annual revenue synergies by 2025, ~$30 million in annual net cost synergies by 2025, and with ~$30 million in cumulative capex savings through 2025.

"One Medical has proven its ability to drive profitable membership growth, engage with members, improve health outcomes and lower costs.  I am excited at the prospect of creating even more differentiation by adding Iora Health's Medicare-focused capabilities, expanding our reach to 28 markets, and offering our service experience to the parents and grandparents of our 598 thousand members," said Bjorn Thaler, Chief Financial Officer, One Medical.

5

**Leadership and Governance**

A designee of Iora Health will join the One Medical Board and Rushika Fernandopulle will become One Medical's Chief Innovation Officer.

**Transaction Details**

Under the terms of the agreement, Iora Health shareholders will receive 56.1 million shares of One Medical common stock. Based on the closing share price of One Medical's common stock of $35.59 on June 4th, 2021, the total transaction is valued at approximately $2.1 billion. Upon completion of the transaction, Iora Health shareholders are expected to own approximately 26.75% of the combined company.

The transaction is expected to close in late Q3 or Q4 of 2021 and is subject to customary closing conditions, including approval by One Medical and Iora Health stockholders and receipt of regulatory approval.

**Advisors**

Morgan Stanley & Co. LLC served as exclusive financial advisor to One Medical and Cooley LLP served as legal advisor.

Credit Suisse served as exclusive financial advisor to Iora Health and Skadden, Arps, Slate, Meagher & Flom LLP served as legal advisor.

**B. The Materially Incomplete and Misleading S-4**

24. The Individual Defendants must disclose all material information regarding the Proposed Transaction to 1Life stockholders so that they can make fully informed decisions when voting on the Proposed Transaction. On July 6, 2021 (amended July 14, 2021), Defendants filed the S-4 with the SEC. The purpose of the S-4 is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Stock Issuance. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Stock Issuance.

25. Specifically, as set forth below, the S-4 fails to provide Plaintiff with material information or provides materially misleading information concerning: (a) 1Life's and Iora's

financial forecasts; (b) the financial analyses performed by 1Life's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"); and (c) potential conflicts of interest involving Morgan Stanley.

### *Materially Incomplete and Misleading Disclosures Concerning 1Life's and Iora's Financial Forecasts*

26. The S-4 provides that, in connection with its fairness opinion, Morgan Stanley "reviewed certain financial projections prepared by the managements of Iora and 1Life, respectively." The S-4, however, fails to disclose material information concerning those financial projections, including: (a) all line items underlying adjusted EBITDA and unlevered free cash flows, as well as the other metrics set forth in the S-4; and (b) the assumptions underlying each of the forecasts.

27. The disclosure of projected financial information is material as it provides Plaintiff with a basis upon which to make an informed decision on whether to vote in favor of the Stock Issuance.

### *Materially Incomplete and Misleading Disclosures Concerning Morgan Stanley's Financial Analyses*

28. With respect to the *Discounted Future Value Analysis* conducted for both Iora and the Company, the S-4 fails to disclose material information regarding each such analysis including: (a) the basis for Morgan Stanley's application of the ranges of 2023E revenue multiples in each analysis; (b) the inputs and assumptions underlying the selection of the discount rates used in each analysis; and (c) the Company's projected net debt balances.

29. With respect to the *Discounted Cash Flow Analysis* conducted for both the Company and Iora, the S-4 fails to disclose: (a) the unlevered free cash flows and terminal values that Morgan Stanley used in connection with each such analysis; (b) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates; and (c) the net operating losses and cash from the future capital raises used in the analyses.

30. With respect to the *Broker Price Targets Analysis*, the S-4 fails to disclose: (a) the price targets observed in the analysis; (b) the sources thereof; and (c) the individual inputs and assumptions underlying the discount rate.

### *Materially Incomplete and Misleading Disclosures Concerning Morgan Stanley's Potential Conflicts of Interest*

31. The S-4 fails to disclose material information concerning potential conflicts of interest faced by one of the Company's financial advisors, Morgan Stanley.

32. Specifically, the S-4 fails to disclose: (a) the circumstances under which Morgan Stanley will receive "up to an additional $2 million" on top of the fees it already received; (b) whether the Company intends to pay Morgan Stanley any of that additional fee; and (c) whether Morgan Stanley has performed past services for the parties to the Merger Agreement or their affiliates, and if so, the timing and nature of the services and the amount of compensation received by Morgan Stanley for providing the services.

33. This information is crucial to allow shareholders to be able to assess the objectivity of the financial advisors and to decide what credence, if any, to give to the fairness opinion recommending the Proposed Transaction. Without all material information, Plaintiff is unable to make a fully informed decision in connection with the Stock Issuance and faces irreparable harm, warranting the injunctive relief sought herein.

34. In addition, the Individual Defendants knew or recklessly disregarded that the S-4 omits the material information concerning the Proposed Transaction and the Stock Issuance and contains the materially incomplete and misleading information discussed above.

35. Specifically, the Individual Defendants undoubtedly reviewed the contents of the S-4 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the S-4 omits the material

information referenced above and contains the incomplete and misleading information referenced above.

36. Further, the S-4 indicates that on June 6, 2021, Morgan Stanley reviewed with the Board its financial analysis of the Proposed Transaction and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Proposed Transaction was fair, from a financial point of view, to 1Life stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Morgan Stanley's financial analyses which has been omitted from the S-4, and thus knew or should have known that such information has been omitted.

37. Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Defendants have filed the S-4 with the SEC with the intention of soliciting 1Life stockholder support for the Stock Issuance. Each of the Individual Defendants reviewed and authorized the dissemination of the S-4, which fails to provide the material information referenced above.

40. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the

Individual Defendants, by virtue of their roles as officers and/or directors of 1Life, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

41. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42. Specifically, and as detailed above, the S-4 violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (a) 1Life's and Iora's financial forecasts; (b) the financial analyses performed by 1Life's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"); and (c) potential conflicts of interest involving Morgan Stanley.

43. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the S-4 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the S-4 states that Morgan Stanley reviewed and discussed its financial analyses with the Board on June 6, 2021, and further states that the Board considered Morgan Stanley's financial analyses and fairness opinion in connection with approving the Proposed Transaction and the Stock Issuance. The Individual Defendants knew or should have known that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

44. The misrepresentations and omissions in the S-4 are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Stock Issuance. Plaintiff has no adequate remedy at law. Only

through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of 1Life within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of 1Life and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to the time the S-4 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Stock Issuance, which is

necessary to effectuate the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

49. In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing any further amendments to the S-4 with the SEC or otherwise disseminating any further amendments to the S-4 to 1Life stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Stock Issuance and/or the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the S-4;

C.   In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D.   Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E.   Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.   Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 13, 2021                **ROWLEY LAW PLLC**

*S/ Shane T. Rowley*
Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*